I. C. WHEELER AND SAMUEL WHEELER, Respondents,
v. EMMA B. BALL, ADMINISTRATRIX, ETC.,
Appellant.

### Kansas City Court of Appeals, May 23, 1887.

1. VENDOR AND PURCHASER—RULES GOVERNING RELATION BEFORE
AND AFTER DEED.—The general principles of the contract of sale
of real estate, while the contract is still *executory*, recognize and
enforce the right of a purchaser to a *title clear of defects* and
incumbrances ; but when the contract has been consummated by
the execution and delivery of *the deed*, a different rule comes in ;
the *terms of the deed* fill the measure of the rights of the parties
and the contract *merges* in the deed.

2. ———— ADMINISTRATOR'S DEED—COVENANTS OF WARRANTY, ETC.
There is no warranty in judicial or administration sales. But
where the deed, as in this case, is based on special statutory pro-
ceedings, under sections 173, 178, Revised Statutes, the cases are
not similar ; and the latter is for the *specific* execution of the *con-
tract*, which would be the execution of a general warranty deed,
the statute providing that it "shall be as effectual as if it had
been executed by the deceased."

3. ———— ———— CASE ADJUDGED.—This action is not based on the
deed, but is, in effect, a claim before the probate court for money
paid, which, it is alleged, should rightfully have been paid by the
intestate. It cannot be maintained.

APPEAL from Jasper Circuit Court, HON. M. G.
McGREGOR, Judge.

*Reversed.*

Statement of case by the court.

Appellant is the administratrix of the estate of E.
P. Ball, deceased.

I. F. Garner, on April 1, 1876, was the owner of lot
584 in North Carthage, and executed a deed of trust
upon said lot to M. G. McGregor, trustee, to secure
payment to McAfee & Phelps of two notes of said date

of $122.50 each, due respectively in six and twelve months, with interest from date at the rate of ten per cent. per annum, the interest, if not paid when due, to become part of the principal and bear the same rate of interest.

On January 19, 1881, Garner conveyed the lot to C. P. Ball, by warranty deed in usual form, which deed contains the following condition and undertaking : "Subject to a mortgage of two hundred and fifty dollars, due C. B. McAfee and given by grantors herein, which said second party hereby assumes and agrees to pay, it being part of the consideration of this conveyance."

On the third day of April, 1882, said Ball executed and delivered to plaintiffs a bond for a deed for said property, being an ordinary title bond, making no reference to the assumption of the payment of the deed of trust or other incumbrance.

Ball died on the tenth day of May, 1883, and defendant was duly appointed administratrix of his estate. On February 11, 1884, the plaintiffs filed their petition in the probate court alleging full payment for the property and asking for specific performance of the contract or bond above set out.

Upon a hearing of the matter the probate court directed the administratrix to specifically execute the contract, and in obedience to the order of the probate court the administratrix executed and delivered to the plaintiffs a deed to the property and the plaintiffs surrendered the contract or bond for a deed to the administratrix.

On the third day of April, 1875, plaintiffs paid C. B. McAfee and John S. Phelps the notes specified in the deed of trust given by Garner to McGregor, and then gave notice to the administratrix of the presentation of a claim against the estate of Ball, which notice set out the notes given by Garner to McAfee & Phelps, the deed of trust to McGregor heretofore referred to,

the deed from Garner to Ball, the bond for a deed from Ball to Wheelers, the petition for specific performance of contract, the deed by the administratrix to plaintiffs, and the payment of the notes to McAfee & Phelps, upon which state of facts the plaintiffs asked to have the amount paid by them to McAfee & Phelps in extinguishment of the notes allowed as a demand against the estate of Ball. The claim was allowed in the probate court, and on appeal to the circuit court was again allowed and defendant brings the case here.

W. H. PHELPS, for the appellant.

I.  The *acceptance* of the administratrix's deed and *surrender* of the bond for the deed given by Ball in his lifetime to the plaintiffs, was a *complete execution of the antecedent* agreement to convey, and *no further action* could be maintained upon it, and any inconsistencies between the terms of the contract and the terms of the deed are to be determined solely by the latter into which the former are *merged.* And the purchaser's only right to relief from defects or incumbrances, whether in law or equity, depends solely upon the *covenants for title* which he has received in his deed. Rawle on Covenants for Title, 565; *House v. Barker*, 3 Johnson, 506; *Houghtaling v. Lewis*, 10 Johnson, 296; *Jones v. Wood*, 16 Pa. St. 225; *Shouts v. Brown*, 27 Pa. St. 120; *Carter v. Beck*, 40 Ala. 590.

II.  The court erred in permitting the plaintiffs to show by parol that *Ball agreed to assume the payment of the notes* upon which the plaintiffs base their claim in this action, as it was in contradiction and not in explanation of the written agreement contained in the deed from Garner to Ball. *Koehring v. Muemminghoff*, 61 Mo. 407.

III.  The *probate court* has no *equity power and cannot* enforce the doctrine of *subrogation* upon which the plaintiffs seem to claim the right to have this claim allowed *against the estate* of Ball. *Presbyterian*

*Church v. McElhenney,* 61 Mo. 543; *Grayson v. Waddell,* 63 Mo. 523; *Butler v. Lawson,* 72 Mo. 245.

IV.    The court erred in *admitting any testimony* on the part of the plaintiffs and in *refusing* the second and third *declarations* of law asked by the defendant. The court having declared in the second declaration of law given on behalf of the defendant that the plaintiffs *have no claim against the estate of Ball,* other than that arising under the bond for a deed given by Ball to the plaintiffs, *could only recover on account of the breach of the condition of the bond, if at all.* The only contract made between C. P. Ball and the plaintiffs was an agreement to execute and deliver to plaintiffs a warranty deed to certain lots upon the payment by plaintiffs of the purchase money, and there is no question but that plaintiffs could have required Ball to make a good title to the lot and pay off the mortgage to McAfee & Phelps before they could have been required to pay the purchase money.    Rawle Covenants for Title, 42; *Brown v. Gammon,* 14 Me. 276; *Hill v. Hobart,* 16 Me. 164; *Stow v. Stevens,* 7 Ver. 27; *Joslyn v. Taylor,* 33 Ver. 470; *Littleford v. Paddleford,* 13 N. H. 167; *Dodd v. Seymour,* 21 Conn. 480; *Swan v. Drury,* 22 Pick. [Mass.] 488; *Dwight v. Cutler,* 3 Mich. 576; *Tackett v. Williamson,* 31 Mo. 54; 37 Mo. 388; *Davis v. Henderson,* 17 Wis. 166; *Pugh v. Chuseldine,* 10 Ohio, 109.    All the foregoing authorities hold to the doctrine that while the contract is still executory the purchaser has a right to a title clear of defects and incumbrances, and a court of equity will not decree specific performance where the title is bad, or even where it is doubtful. But when the contract has been consummated by the execution and delivery of the deed a different rule comes in.    Dart on Vendors, 734.

V.    Being thus consummated any *inconsistencies* between the terms of the contract and the terms of the deed are in general to be determined *solely by the latter into which the former* are *merged,* and the purchaser's only

right to relief from defects or incumbrances, whether at law or in equity, depends, in the absence of fraud, solely *upon the covenants* for title which he received. Rawle on Covenants for Title, 565-6; *House v. Barker*, 3 Johnson, 506; *Houghtaling v. Lewis*, 10 Johns. 206; *Bull v. Willard*, 9 Barb. 642; *Seitzinger v. Weaver*, 1 Rawle, 377; *Cronister v. Cronister*, 1 Watts & Serg. (Pa.) 442; *Ludwick v. Hentzinger*, 5 Watts & Serg. 51; *Griffith v. Kempshall*, 1 Clark Chan. 577; *Jones v. Wood*, 16 Pa. St. 25; *Shouts v. Crown*, 27 Pa. St. 123; *Carter v. Beck*, 40 Ala. 590; *Haggerty v. Fagin*, 2 Pa. 533; *McKennan v. Dougham*, 1 Pa. 417; *Creigh v. Beelin*, 1 Watts & Serg. 83.

VI. It was *not competent to show by parol that* Ball assumed to pay the notes offered in evidence, as the testimony was not in explanation of the contract made between Ball and Garner, but in contradiction of it. While *parol evidence is admissible* for the purpose of explaining a written contract, it is not competent for the purpose *of changing it*.

H. C. DEVORE and D. A. HARRISON, for the respondents.

I. It was the duty of the probate court to hear and determine the demand in a summary way and to receive all competent evidence without the form or technical precision of pleading. 1 W. & S. sect. 18; *Sublet v. Neilson*, 38 Mo. 487. The assumption by C. P. Ball of I. F. Garner's trust debt to McAfee and Phelps, by acceptance of the deed from Garner, with the recital that the lot therein conveyed was subject to said debt as part consideration of the conveyance, made said debt Ball's own personal debt, and subjected him to a liability which the holder of the notes may enforce by personal action. *Heim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 685. The stipulations of Ball's contract with Garner enured to the benefit of McAfee and Phelps, and all holders of the notes under

them, if adopted by such holders—and they may maintain a personal action thereon. *Fitzgerald v. Barker*, 70 Mo. 687 ; *Meyer v. Lowell*, 44 Mo. 328 ; *Flanagan v. Hutchinson*, 47 Mo. 239 ; *Rogers v. Peak*, 51 Mo. 469 ; *Cress v. Blodgett*, 64 Mo. 452.

II.  Plaintiffs as the *owners of said lot 584*, to save it from sale for the satisfaction of said trust debt, *had the right* to *pay the McAfee and Phelps notes*, and not being legally liable to pay said debt, the same was not *extinguished* and they *became subrogated to all the rights* of McAfee and Phelps against Ball, who had made said debt his own personal debt. *Swope v. Leffingwall*, 72 Mo. 348 ; *Allen v. Dermott*, 80 Mo. 56.

III.  The probate court *had jurisdiction* of the subject-matter of this action—the only purpose being to obtain an allowance against the estate of Ball for $578.17 paid McAfee and Phelps.  It is a case of a mere recovery of a demand against said estate for the personal debt of the decedent existing at the time of his death.  Acts 1865-6, p. 83 ; *Butler v. Lawson*, 72 Mo. 350; *Presbyterian Church v. McElhinney*, 61 Mo. 544 ; *Hammons v. Renfrow*, 84 Mo. 332.  It is not an action to follow a trust fund through all its transformations from money into personal and real property, or to divest title and vest it in the rightful owners, etc., requiring the intervention and machinery of chancery powers, but a case where the remedy at law *is amply efficacious and complete.*

IV.  The objection that the circuit court erred in admitting the *parol evidence* is not tenable, as it is now the well settled law of this state that parol evidence is admissible to show what was the consideration of a deed.  *Dobyns v. Meredith*, 22 Mo. App. 448 ; *Landman v. Ingram*, 49 Mo. 212 ; *Browne v. Browne*, 47 Mo. 130 ; *Fountain v. Boatmen's Savings Institution*, 62 Mo. 267 ; *Baile v. Ins. Co.*, 73 Mo. 371 ; *Liebke v. Knapp*, 79 Mo. 27 ; *Hall v. Morgan*, 79 Mo. 51.

V.  The *main ground* upon which respondents

base their right to recover and rely in this action, is, that Ball having *agreed and assumed* in writing to pay Garner's trust debt to McAfee and Phelps, as part of the consideration of the deed from Garner to Ball, which assumption is *recited in the deed*, made said trust debt Ball's own *personal debt*, and Ball thereby became personally liable to McAfee and Phelps, or any other holder of said debt; and the plaintiffs, as the owners of said lot 584, having paid off or purchased said trust debt for the purpose of saving it from sale for the satisfaction of the lien thereof; as holders of said McAfee and Phelps notes, and which was the debt of Ball, and existing at the time of his death, *acquired or became subrogated to all the rights of McAfee and Phelps*, and can present the same as a *personal demand* against Ball's estate and recover the amount due thereon the same as any other creditor could do to whom Ball was personally indebted at the time of his death. The above theory of this case is in entire accord with the law laid down in the cases of *Heim v. Vogel* (69 Mo. 529); *Fitzgerald v. Barker* (70 Mo. 689); *Swope v. Leffingwell* (72 Mo. 366), and *Allen v. Dermott* (80 Mo. 56, *supra*), and the authorities therein referred to, and also with the first declaration of law given by the Jasper circuit court and *not questioned by appellant's attorney in his brief*.

ELLISON, J.—It will be noticed that this claim or action is not based on the McAfee notes themselves, but is for money paid out by plaintiffs in extinguishing these notes. Ball's liability to plaintiffs must arise either from his request to plaintiffs to pay for him his debt, or by reason of the obligations imposed by the title bond or deed, executed by his administrator. There is no pretense of any request from Ball to plaintiffs, and all liability in this action must, therefore, arise either on the bond or deed. I can see no reason, and am not aware of any authority, for the position that

the bond, as we find it, gives plaintiffs any rights against the defendant. The only contract contained in the bond was for the execution of a warranty deed to plaintiffs, when they should pay the purchase money therein stipulated. This purchase price was paid, and a deed, such as plaintiffs asked at the hands of the probate court, was executed and accepted by plaintiffs, and they surrendered up their bond. Before the execution of the deed and the surrender of the bond, while the contract was yet executory, plaintiffs' rights were far greater than after.

"The distinction between the rules which govern the relation of vendor and purchaser, before and after the execution of the deed, while the contract is still executory and after it is executed, is a broad and familiar one. The general principles of the contract of sale of real estate, while the contract is still executory, recognize and enforce the right of a purchaser to a title clear of defects and incumbrances, but when the contract has been consummated by the execution and delivery of the deed, a different rule comes in." Dart on Vendors, 734.

When the contract has been consummated by a deed, 'the terms of the deed fill the measure of the rights of the parties, and the contract merges in the deed. *House v. Barker*, 3 Johns. 506; *Houghtaling v. Lewis*, 10 Johns. 297; *Carter v. Beck*, 40 Ala. 599; *Shoutz v. Brown*, 27 Pa. St. 123; *Jones v. Wood*, 16 Pa. St. 25.

In the case of *Houghtaling v. Lewis* (*supra*), the court say: "Articles of agreement, for the conveyance of land, are, in their nature, executory, and the acceptance of a deed in pursuance thereof, is to be deemed, *prima facie*, an execution of the contract, and the agreement thereby becomes void and of no further effect. The presumption of law arising from the acceptance of a deed is, that it is an execution of the whole contract, and the rights and remedies of the parties, in relation to

such contract, are to be determined by such deed, and the original agreement becomes null and void." This appears to me to be a sound and salutary rule, and conformable to the doctrine of the court in the case of *House v. Barker* (3 Johns. 506). The chief justice, in that case, said "that he could not surmount the impediment of the deed, which the plaintiff had accepted from the defendant, and that he thought himself bound to look to that deed as the evidence of the agreement of the parties."

The court gave, for the defendant, the following instruction: "That the covenant against incumbrance, implied by the words, 'grant, bargain, and sell,' in the administratrix's deed from the defendant to plaintiffs, does not bind the estate of C. P. Ball, deceased, and the estate is not liable because of the breach of such covenant, or because of any incumbrance on the land conveyed by said deed." By the terms of this deed the covenants implied by the words, grant, bargain, and sell, would ordinarily entitle plaintiffs to discharge a lien on the property conveyed, and recover the amount thereof from the covenantor. It seems, however, to have been conceded, all around, that this instruction was correct as to this administratrix deed; the concession, I apprehend, arising from a recognition of the principle, that there is no warranty in judicial or administration sales. If this case was an action on the covenants of this deed, and passing by the question as to our jurisdiction, I would be inclined not to acquiesce in the concession, and to condemn the instruction quoted. This is not like an ordinary sale by an administrator. It is based on special statutory proceeings, under sections 173, 178, Revised Statutes, and is for the *specific* execution of the *contract*. A specific execution of the contract would be the execution of a general warranty deed, "such deed shall (would) be as effectual as if it had been executed by the deceased." Rev. Stat., sect. 178. Such proceeding is unlike the ordinary admin-

istration sale, where the deed only conveys "all the right, title, and interest, which the deceased had in the same." Rev. Stat., sect. 169. As the cause is to be reversed, these suggestions are made that the plaintiffs may consider further of their remedy.

This action is not based on the deed, but is, in effect, a claim before the probate court for money paid, which, it is alleged, should rightfully have been paid by the intestate. It cannot be maintained.

The other judges concurring, the judgment is reversed.